# MIKKI HIVANEN v. DULUTH & IRON RANGE RAILROAD COMPANY and Another.[1]

January 20, 1911.

Nos. 16,925—(156).

**Homestead entry — cancellation without notice — equitable title.**

The plaintiff, a qualified homesteader, on August 15, 1900, made settlement and entry on certain land under the United States homestead laws, which the notes of the survey thereof showed was swamp. With his entry application he filed a statement, sworn to by him and two witnesses, that the land was not swamp. The local land officers appointed December 11, 1900, for a hearing of the contest; but no notice was given to him of the hearing, nor did he have any knowledge thereof. The contest was dismissed for the alleged reason that he did not appear and prosecute the contest. His homestead entry was afterwards canceled, and the land, which was never swamp, was thereafter certified to the state and deeded by it to the appellant May 3, 1904. The plaintiff went into actual possession of the land September 13, 1900, as his homestead, made permanent improvements thereon, and duly and in good faith performed or tendered performance of all acts which were essential to complete his title to the land, and was prevented from securing the legal title only by the mistake and inadvertence of the land department. The appellant had notice of the rights and equities of the plaintiff when it received its deed for the land. The trial court found such facts, and as a conclusion of law that the plaintiff was the equitable owner of the land, the naked legal title to which was held by the appellant in trust for him. *Held,* that the findings of fact are sustained by the evidence, and that the conclusion of law is correct.

Action in the district court for St. Louis county against Duluth & Iron Range Railroad Company and Iron Queen Mining Company to determine adverse claims to certain land. The separate demurrer of the railroad company was overruled. The railroad company then answered, and alleged that it was the owner in fee simple of the land, but that plaintiff was in possession and refused to deliver possession to defendant railroad company. The case was tried before Dibell, J., who made findings of fact and conclu-

[1]Reported in 129 N. W. 510.

sions of law, as stated in the opinion. From the decree that plaintiff was the equitable owner of the land in question, entered pursuant to the order for judgment, defendant railroad company appealed. Affirmed.

*Crassweller, Crassweller & Blu* and *Frank D. Adams,* for appellant.

*I. Grettum,* for respondent.

*George T. Simpson,* Attorney General, and *Lyndon A. Smith,* Assistant Attorney General, filed a brief for the State.

START, C. J.

This action was brought in the district court of the county of St. Louis to determine adverse claims to the real estate described in the complaint, and the appeal is by the defendant Duluth & Iron Range Railroad Company, hereafter referred to as the Railroad Company, from a judgment whereby it was decreed that the plaintiff was the equitable owner of forty acres of the lands, the naked legal title of which was held by the Railroad Company in trust for the plaintiff. The cause was tried by the court without a jury. The findings of fact, so far as here material, are to the effect following:

On April 27, 1885, the United States surveyor general for the state of Minnesota made a list of lands, known as "swamp and overflowed lands," within the meaning of the act of congress granting such lands to the state. The forty acres here in controversy, hereafter referred to as the "forty," was included in this list. On April 29, 1885, a copy of such list was filed in the proper land office at Duluth, and on the same day a plat of the lands was also filed, and the lands described in the list were designated on the plat as "swamp land," and also in the tract book in such office. On February 8, 1904, the list was approved and certified by the secretary of the interior as swamp lands, and on March 12, following, the lands described in the list were patented to the state of Minnesota as swamp lands. The forty was not in fact swamp land at the time of the grant to the state, and has never been since. On May 3, 1904, the state executed a deed of the forty to the railroad com-

pany which was duly recorded in the proper office. On August 7, 1900, the plaintiff was in all respects duly qualified to make a homestead entry under the laws of the United States, and on that day he duly made his homestead affidavit and application to enter the forty, with other lands, as a homestead, before the United States commissioner at Ely, which were sent to the local land office at Duluth and were received and filed therein on August 15 following. The register of the land office certified at the bottom of the application that it was for lands of the class the applicant was legally entitled to enter, and on the face of the application the words "Allowed subject to swamp." He also issued duplicate receipts for the entry fee and indorsed on the one sent to the general land office these words: "Subject to swamp claim of state." But these words were not indorsed on the duplicate delivered to the plaintiff.

The plaintiff made his affidavit of contest, which, with a corroborating affidavit, was filed in the local land office August 15, 1900, and on the following October 20 the register made a notice reciting the filing of such affidavit of contest against the state, and required the parties to appear before the register and receiver on the day fixed therein for hearing on December 11. No notice of this hearing was sent to plaintiff by mail or otherwise, or served upon him, or received by him, nor did he in any way have actual notice of such hearing. On December 11, 1900, the day appointed for the hearing, the contest was dismissed for the alleged reason that the plaintiff had failed to prosecute the contest. Notice thereof was sent to him at Ely, Minnesota, his post office address, April 1, 1901, by registered letter; but it never reached him, and it was returned unclaimed. Nor did he appear in any of the proceedings relative to such contest. On August 13, 1901, the commissioner held the entry for cancellation, with the usual right of appeal, and directed that notice thereof be given said plaintiff, and that a further report be made. On December 6, 1901, the commissioner, upon report made of the service by registered mail of notice of the decision of August 13, 1901, canceled entry and directed the land office at Duluth to make proper notations and advise the parties in

interest of such action. No notice of the decision of the commissioner of December 6, 1901, canceling his homestead entry, was sent to him or given to him in any way, nor did he ever have notice thereof; and from the time of the making of his homestead affidavit and entry he received no notice of any kind relative thereto, and he had no notice or knowledge of any proceeding taken in the land office relative to his entry and contest.

On September 16, 1900, the plaintiff moved upon the land, commenced clearing it, erected two dwelling houses thereon, and made improvements thereon to the value of more than $1,500. He so entered upon the lands, occupied them, and made such improvements in good faith, intending the same as a permanent home. He did not, and does not now, read or write the English language. Nor did he understand the land laws, and while he instituted the contest he did not understand the nature of the proceeding, and believed that all that was necessary in order to acquire title to the land was to reside thereon the requisite period, make the necessary improvements, and in due time make proof of his settlement. On December 26, 1905, he made application to submit his final homestead proof to the United States commissioner at Ely. A time and place for such hearing was fixed, notice thereof duly published, and the proof taken and forwarded to the land office at Duluth. The proof was rejected because his entry conflicted with the swamp land grant to the state, and not because of any insufficiency of the proof. Notice of such rejection was given to him, and this was the first notice or knowledge on his part of any adverse claims to the lands included in his entry.

The railroad company, at the time it acquired the interest in the forty which it claims, had notice of the plaintiff's claim thereto. The patent to the state was issued through mistake, inadvertence, and error, without a determination of the contest of the plaintiff, and without notice to him of a hearing of the contest, and without any determination, in fact, of the character of the lands covered by the patent; and but for the failure to give him notice of the hearing he would have established in the land department his right to the lands and would have sustained the contest instituted by him.

As a conclusion of law the trial court directed judgment for the plaintiff to the effect that he was the equitable owner of the forty, the naked legal title of which was held by the railroad company for him.

The first group of assignments of error raises the question whether the complaint as amended states a cause of action. The complaint is not to be commended as a model pleading, but, liberally construed, it crudely states a cause of action as against the railroad company.

The next group of alleged errors raises the question whether certain of the findings of fact are sustained by the evidence. The first one in importance is that the finding that the forty, at the time the swamp land grant was made to the state, was not swamp land. There was no direct evidence to the effect that the land was not swamp land at or before the time the grant was made. It is apparent that it would have been impracticable to have produced witnesses who saw the land before the grant was made. There was, however, evidence tending to show the character of the land, its fitness for cultivation, and its topography, which fully justifies the inference and finding of the trial court that it was not swamp land at the time of the grant.

Other assignments of error are to the effect that the evidence does not support the finding that no notice of the time and place of hearing of the contest fixed for December 11, 1900, was ever given to the plaintiff in any manner, nor the finding that no notice was served on him in any manner of the decision of the commissioner of December 6, 1901, canceling his entry. Each of the findings is sustained by the evidence, which shows that only two notices were sent to him, one of April 1, 1901, as to the dismissal of the contest of December 11, 1900, and one relative to the decision of the commissioner holding the entry for cancellation.

The only other assignment of error relating to the findings of fact is, in effect, that there is no evidence to sustain the finding that the patent to the state for the land was issued through mistake and inadvertence. This finding and conclusion must rest upon the finding that no notice was given to the plaintiff of the time and place

of the hearing of the contest and its materiality. If the plaintiff was entitled to such notice, and it was not given, the issuance of the patent, upon the assumption that the notice had been given and the contest terminated, was by mistake and inadvertence. It follows that the pivotal question presented by the record is whether the plaintiff, by the rules and practice of the general land office, was entitled to such notice. The grant to the state was one in præsenti, but it included only swamp land as defined by the grant; hence, if the land in question was not swamp, then title thereto never passed to the state, and it was subject to settlement and entry by the plaintiff, for he was a qualified homesteader. While this is true, the adjustment of the grant, and a determination whether the forty was or was not swamp, was a matter within the jurisdiction of the general land office, to be determined in accordance with rules and procedure prescribed by it and in force *at the time* of the plaintiff's settlement and entry. Such rules were changed from time to time. Lachance v. State, 4 Land Dec. Dep. Int. 479 (April 7, 1886); General Circular, 5 Land Dec. Dep. Int. 279 (Dec. 13, 1886); Sutton v. State, 7 Land Dec. Dep. Int. 562 (Dec. 22, 1888); Secretary's Letter, 32 Land Dec. Dep. Int. 65 (March 16, 1903); Lampi v. State, 37 Land Dec. Dep. Int. 385 (Jan. 7, 1909).

In the Lachance case it was held that, although the survey might show the land within the grant, a settler on the land might attack the survey and have it vacated for fraud; and in the subsequent case of Sutton it was held that it was not necessary to show fraud in making the survey, but that it was sufficient to show a mistake therein as to the character of the land. After the plaintiff's settlement and entry in 1900, and in 1909, it was held in the Lampi case that the settler must apply for a hearing on and assume the burden of the contest as to the character of the land, but obviously the decision is not here relevant.

The circular letter of December 13, 1886, promulgated rules as to entries and filings on lands selected, to the effect, so far as here material, following: (1) When a settler applies to enter such land, his application must be accompanied with a sworn statement of himself and two corroborating witnesses that the land in

its natural state is· not swamp. (2) On filing such application and statement the register must notify the Governor of the state and allow him sixty days in which to object and apply for hearing on behalf of the state to prove the character of the land. (3) The burden of proof is on the state. (4) If the Governor does not make such application, the state will be deemed concluded from asserting a claim. (5) The foregoing applies only to those states whose claims are adjusted by examinations in the field. (6) Where swamp land selections are based upon the field notes of. survey, and the land is alleged not to have been in fact swamp, the burden of proof will be upon the contestant or adverse claimant under the public land laws.

The state of Minnesota accepted the proposition of the general land office to adjust its swamp land grant on the basis of the surveys, subject to the right of such land office to supervise their selection and its right to hold them subject to its control until they shall have been patented. The secretary's letter of March 16, 1903, directed, with certain exceptions, that in all contests *thereafter* begun with reference to swamp lands in Minnesota the character of the land should be determined by the field notes of the survey. It is not necessary to construe this letter of March 16, 1903, for the rights of the plaintiff must be determined by the rules in force prior to that date.

The rules and procedure established by the circular of December 13, 1886, are in some respects uncertain by reason of subdivision 5. One thing, however, is clear: It was not intended thereby to except from the operation of subdivisions 1, 2, 3, and 4 of the circular states which had accepted the surveys as a basis for the adjustment of their grants; otherwise there could be no contests in such cases of any kind as to the character of any land included in the survey, although it was palpable that it never was swamp. Again, subdivision 6 of the circular expressly recognizes that contests may be made where selections are based on the field notes, and such has been the practical construction of the circular by the land department. The only effect of subdivision 5 of the circular would seem to be that it changes the burden of proof as to the character of the land from the state to the contestant in states which elected to

have their grants adjusted on the basis of the surveys. Putten v. State, 19 Land Dec. Dep. Int. 180 (Oct. 9, 1894).

However this may be, a consideration of the rules and procedure of the land office in force at the time of plaintiff's application and entry has led us to the conclusion, as it did the learned trial judge, that the plaintiff was entitled to notice of the time fixed for the hearing of the contest, and that the subsequent notice by registered letter of the dismissal of the contest did not remedy the failure to give the notice of hearing conceding that by the rules of the land office notice to a contesting homesteader by registered mail is sufficient.

It follows that the patent in this case was issued to the state by mistake of fact and law. The forty in question was not in fact swamp land. The plaintiff in entire good faith entered upon the land for the purpose of acquiring title thereto under the homestead law. Upon it he struggled for years with the elements and the wilderness in his efforts to create a permanent home for himself, his wife, and seven children. He cleared and plowed a part of the land, erected thereon two dwelling houses and a barn, dug two wells, and made permanent improvements to the value of more than $1,500. His possession was notice to the railroad company, at the time it received its deed from the state, of his rights and equities in the land. The land department, in fact, never passed upon the question whether the land was swamp land or not, but dismissed the contest because the plaintiff did not appear at a hearing of which he had no notice. The plaintiff in good faith performed, or tendered performance, of all acts, which were essential, under the homestead laws, to complete his title to the land, and was prevented from securing the legal title thereto only by the mistake of the land officers. This case then falls within the rule established in the case of Roy v. Duluth & I. R. R. Co., 69 Minn. 547, 72 N. W. 794, and 173 U. S. 587, 19 Sup. Ct. 549, 43 L. ed. 820, and the defendant railroad company holds the legal title to the forty in trust for the plaintiff, the equitable owner.

Judgment affirmed.

SIMPSON, J., took no part.